IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EMPLOYERS INSURANCE OF WAUSAU, A MUTUAL COMPANY,<br><br>          Plaintiffs,<br><br>v.<br><br>ST. CLAIR CONTRACTORS, INC., an Idaho Corporation; ARLISS A ST. CLAIR; RANDALL T. ST. CLAIR and CINDY M. ST. CLAIR, Husband and Wife; DENNIS RAY ST. CLAIR and KAREN ELAINE ST. CLAIR, Husband and Wife; THE CITY OF McCALL, an Idaho Municipal Corporation; INTERWEST SUPPLY, INC., an Idaho Corporation; and DEVELOPERS SURETY & INDEMNITY CO., an Iowa Corporation,<br><br>          Defendants. | Case No. CV-01-629-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for civil contempt filed by defendant Wausau and joined in by the St. Clair defendants, along with a motion for attorney fees filed by the St. Clair defendants. The Court heard oral argument on April 18, 2007, and took the motion under advisement. For the reasons expressed below, the

**Memorandum Decision and Order – Page 1**

Court will (1) construe Wausau's motion as a second motion to enforce judgment and will grant the motion, and (2) grant in part the St. Clair's motion for fees.

## SUMMARY

Almost three years ago, an Idaho jury ordered the City of McCall to pay $4.9 million to defendants. To date, the City has paid nothing. When challenged, the City offers to pay 10% of the judgment, but not until later this year. When accused of evasion, the City responds that Idaho law restricts the amount it can pay.

The Court disagrees that Idaho law is so restrictive. Indeed, the Court has already ruled that the restrictions relied upon by the City do not apply. The City claims that it was confused by the Court's earlier decision, and that its reassertion of those already-decided arguments is not intended as defiance. While the Court does not see any ambiguity in its earlier decision, it will take the City at its word. This decision is designed to clear the air.

## LITIGATION BACKGROUND

Following a jury verdict, the Court entered Judgment for Wausau and St.Clair in the sum of $4,955,096 against the City of McCall.[1] On appeal, the

---

[1] The Court has also entered judgment for Wausau, and against the City, in the sum of $985,901.64 representing attorney fees and pre-judgment interest (docket no. 269).

**Memorandum Decision and Order – Page 2**

Ninth Circuit affirmed the jury verdict. *Employers Ins. of Wausau v. St. Clair*, 2007 WL 648508 (9th Cir. February 28, 2007).

After receiving no payment from the City, Wausau filed a motion to enforce the Judgment. The Court granted that motion, holding that the City was authorized under Idaho law to borrow money pursuant to Idaho Code § 50-1006 to pay the Judgments and to add that sum to the property tax roles without being subject to the restriction that property taxes could not be increased beyond a growth factor of 3%, pursuant to Idaho Code § 63-802. The Court also rejected the City's assertion that the only way it could raise money to pay the Judgments was through increased property taxes. The Court found no such restriction in Idaho law. At the conclusion of the decision, the Court ordered that the City must "immediately pay any surplus funds it now has to satisfy the Judgments, and if that is not sufficient to satisfy the Judgments, shall immediately collect and pay funds by such means as are available to it to satisfy the Judgments."

That Order was issued on October 19, 2006. When five months passed without any payment by the City, Wausau filed, on March 5, 2007, the present motion to hold the City in contempt for failing to comply with the Court's Order.

On April 12, 2007, the City filed a Complaint for Declaratory Relief in the Idaho state court seeking a declaration that its liability for the Judgments will be

**Memorandum Decision and Order – Page 3**

completely discharged by paying about a tenth of the amount due.[2]  That case has been removed to this Court.

## ANALYSIS

### 1.     Wausau's Motion for Contempt

Wausau seeks to hold the City in contempt for failing to comply with the Court's Order of October 19, 2006, ordering immediate payment.  The City responds that it is doing the maximum allowed under Idaho law to pay the Judgments.  The City's Manager, Lindley Kirkpatrick, testified that the most the City could raise, under Idaho's legal restrictions, would be $608,646 during the fiscal year 2007-2008 – about a tenth of the amount due.  *See Kirkpatrick Affidavit.*

Kirkpatrick's affidavit assumes that the only way for the City to raise money to pay the Judgments would be to raise property taxes, and that any raise would be limited to the 3% cap.  The City also filed the affidavits of two bankers who both stated that their institutions would not loan the City the $5.9 million (representing the Judgments plus accrued interest) unless the City could demonstrate that it could generate that sum through raising property tax revenue within a time frame not

---

[2] The City's prayer for relief seeks a ruling that "upon payment of the sum of $608,646.00 [the amount of extra property tax revenue the City could raise this year under the 3% cap] by the City, as raised and paid pursuant to [Idaho Code §] 50-1006, the City will have satisfied its obligation to pay the Judgment as provided by law." *See Complaint (Prayer for Relief)* at p. 5, ¶ 2.

**Memorandum Decision and Order – Page 4**

exceeding the close of the next fiscal year.  *See Affidavits of Heringer & Neufeld*.  They assume that this would be impossible because of the 3% cap.

The flaw in these filings is their assumption that the City is legally precluded from raising from property taxes any sum in excess of the 3% cap.  The Court specifically held in its prior decision, issued five months before these filings, that the City had the legal authority to borrow money to pay the Judgments and could raise property taxes beyond the 3% cap in order to repay the loan within a year.

City Manager Kirkpatrick states that the property tax assessment for 2006-2007 is about $3 million.  *See Kirkpatrick Affidavit* at p. 4, ¶ 27.  To raise an additional $6 million in a single year, the City would have to triple its property tax assessment.

While such an increase would cause a taxpayer revolt, it would be legal.  The Court has already held that the City can borrow the sums needed to satisfy the judgment without being limited by the 3% cap.  *See Memorandum Decision* (filed October 19, 2006).  The Court reaffirms that position here.  The City's filings – specifically, the affidavits of Kirkpatrick, Heringer and Neufeld – displayed a lack of awareness that the Court had so ruled.  If the City was confused, this should clarify matters.

In addition, the Court previously held that nothing in Idaho law restricting

**Memorandum Decision and Order – Page 5**

the City to using only property tax revenues to pay the Judgments. Given that there is no prohibition against the City raising money from sources other than property taxes, the City also has available the bonding procedures of Idaho Code § 50-1019(2).[3] The Judgments represent "outstanding indebtedness" under that statute, the payment of which "can be done to the profit and benefit of [the City] without incurring any additional liability."[4]

Thus, a number of options exist under Idaho law for the City to raise money to pay the Judgment. The City has not pursued any of them. If the City doubted its

---

[3] A somewhat different type of city coupon bond is authorized in Idaho Code § 50-1020. Under that provision, the City may issue city coupon bonds "in a sufficient amount" to "construct" various projects, including "sewerage systems." The project at issue here was the J-Ditch Phase 2 project, a sewage effluent lagoon for the City. Of the verdict sum, $3,325,893 represented construction costs. Thus, the City is free to issue city coupon bonds under Idaho Code § 50-1020 for up to $3,325,893 to raise money to pay the Judgments. This sum is the difference between the jury's total award and the business devastation award. That difference represents construction costs. The jury instructions make that clear. They direct the jury to consider such factors as (1) "the unpaid amount that the City contracted to pay St. Clair for labor, equipment, material and services rendered by St. Clair;" (2) "the reasonable cost of any St. Clair claims for extra work that you find to be valid, less any payments already made by the City;" and (3) "the reasonable costs incurred by Wausau" in completing the project. An election is required, however, which would make it difficult for the City to comply with the Court's order of immediate payment.

[4] The City could also issue revenue bonds. Idaho Code § 1030(e) authorizes the issuance of revenue bonds to finance "in whole or in part the cost of acquisition, construction . . . of any works." The term "works" is defined in Idaho Code § 1029 to include "sewerage systems." Once again, $3,325,893 of the verdict represents construction costs. Hence, the City is authorized by these statutes to issue revenue bonds up to $3,325,893 if approved by voters pursuant to Idaho Code § 50-1035. Under that statute, the voter approval need only be by simple majority if "the principal and interest [are] to be paid solely from the revenue derived from rates and charges for the use of, and the service rendered by such systems, plants and facilities." *See* Idaho Code § 50-1035.

**Memorandum Decision and Order – Page 6**

legal capacity to pursue these options, and had no desire to delay, it could have sought judicial confirmation years ago, but instead waited until just recently to seek a declaration that at most would only authorize payment of one-tenth of the Judgments.

In *Missouri v. Jenkins*, 495 U.S. 33 (1990), the Supreme Court summarized its earlier holding in *Griffin v. Prince Edward County School Bd.,* 377 U.S. 218 (1964) as being that "a court order directing a local government body to levy its own taxes is plainly a judicial act within the power of a federal court." *Missouri*, 495 U.S. at 55. In a separate opinion, Justice Kennedy took a more limited view, pointing out that "*Griffin* endorsed the power of a federal court to order the local authority to exercise *existing* authority to tax." *Missouri*, 495 U.S. at 71 (emphasis in original).

Assuming, *arguendo*, that Justice Kennedy is right, this Court is doing nothing more than ordering the City to exercise its *existing* authority to tax. Here, as the Court has held above and in its earlier decision, the City has authority under Idaho law to immediately (1) borrow money to pay the Judgments and add those sums to the tax roles without being restricted by the 3% cap; and (2) issue city

**Memorandum Decision and Order – Page 7**

coupon bonds to retire the indebtedness represented by the Judgments.[5]  Under *Missouri* and *Griffin*, this Court has the authority to order the City to immediately pay the Judgments using these options.

The Court has also held above that the City has the authority to issue city coupon bonds up to $3,325,893, consistent with Idaho Code § 50-1020, and revenue bonds up to the same sum, pursuant to Idaho Code §§ 1029, 1030(e). Both of these options require elections, making it difficult for the City to comply with the Court's order to immediately pay the Judgments.

The Court will give the City the benefit of the doubt and assume that it was confused by the Court's earlier decision.  The Court will therefore construe Wausau's motion for civil contempt as a second motion to enforce judgment, and will grant that motion.

**2.      St. Clair's Motion for Attorney Fees, Costs and Prejudgment Interest**

St. Clair prevailed as against the City and hence is entitled to attorney fees under Idaho Code § 12-120(3).  A reasonable fee, pursuant to the factors set forth in *Kerr v. Screen Extras Guild*, 526 F.2d 67 (9th Cir. 1975) is $167,020.  The Court will award that sum in fees.  St. Clair is also entitled to its paralegal fees of

---

[5] As discussed above, revenue bonds are another option, but given their requirement of an election, it would be more difficult for the City to comply with the Court's order to immediately pay the Judgments.

**Memorandum Decision and Order – Page 8**

$36,677.50 pursuant to Idaho Code § 12-101 and Idaho Rule of Civil Procedure 54(e)(1), which specifically provides for such an award.  Thus, the total fee award would be $203,697.50.  The cost issues have been resolved and will not be reconsidered.  The claim for prejudgment interest will be denied.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Court hereby construes the motion for civil contempt (Docket No. 299) as a second motion to enforce judgment and it is GRANTED.

IT IS FURTHER ORDERED, that the City shall immediately pay any surplus funds it now has to satisfy the Judgments (Docket Nos. 193 & 269), and the fee award contained herein, and all accrued interest, and if that is not sufficient, shall immediately collect and pay funds by such means as are available to it to satisfy the Judgments, and fee award contained herein, and all accrued interest, including but not limited to: (1) borrowing money pursuant to Idaho Code § 50-1006 to pay the Judgments, the full amount of the borrowed sums not being subject to the limitations of Idaho Code § 63-802; and (2) issuing city coupon bonds pursuant to Idaho Code § 50-1019(2) for up to $3,325,893.

IT IS FURTHER ORDERED, that St. Clair's motion for fees, costs, and

prejudgment interest (Docket No. 218) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks fees in the sum of $203,697.50. It is denied in all other respects.



DATED: **April 23, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 10**